**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IDALIA HOLLAND, et al.,** | : | **Civil No.  3:13-CV-1406** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Mariani)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **POCONO REGIONAL POLICE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of the Case

Idalia Holland and her children filed a *pro se* complaint with this court on May

24, 2013, which the plaintiffs later amended on June 17, 2013.  (Docs. 1 and 14.)  In

these complaints, Holland named a local police department, a county children and

youth office, two employees of that office, and  three state court judges as defendants.

Holland's complaint then recited alleged failures by police and children and youth

services to protect her children between 2003 and April 2011.  (Id.)  According to

Holland, she sued these officials in state court, but it is apparent that this state court

litigation was terminated unfavorably from the plaintiff's point of view, since the

plaintiff now seeks to sue the presiding state court judges in federal court for various alleged civil rights violations. (Id.)

This lawsuit promptly inspired a spate of motions, with no less than seven motions filed in this matter prior to its service upon the dependants. These motions include a motion for leave to proceed *in forma pauperis*, filed by Holland (Doc. 2.), as well as a motion for summary judgment lodged by the plaintiff. (Doc. 12.) The defendants, in turn, have filed no less than four motions to dismiss, (Docs. 8,10,16 and 20.), along with a motion to strike Holland's summary judgment motion. (Doc. 18.)

This sudden proliferation of pleadings, strongly suggests a need for an initial screening of this *pro se, in forma pauperis* complaint. Upon conducting this screening review, for the reasons set forth below, we will grant this motion for leave to proceed *in forma pauperis* (Doc. 2.) but recommend that the court dismiss Holland's complaint for failure to timely state a claim upon which relief can be granted.

## II.    Discussion

### A.    Screening of *Pro Se In Forma Pauperis* Complaints–Standard of Review

This court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by persons who seek leave to proceed *in forma pauperis*. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915(e) which provides, in pertinent part: "[T]he court shall dismiss the case at any time if the court determines that– (A) the allegation of poverty is untrue; or  (B) the action or appeal--(i) is frivolous or malicious;  (ii) fails to state a claim on which relief may be granted; or  (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915 (e).  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.

2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly,

the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The

District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In short, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must comply with the statute of limitations, and recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Applying these standards, we find that this complaint, in its present form, is subject to summary dismissal.

**B.** **This Complaint Fails to State A Claim Upon Which Relief Can Be Granted**

In this case, dismissal of this complaint is warranted because Holland's pleading fails on multiple scores to meet the substantive standards required by law, in that it does not set forth a "short and plain" statement of a cognizable violation of some right guaranteed by the Constitution or laws of the United States. Indeed, Holland's complaint is fatally flawed in at least six separate respects. The flaws in the *pro se* complaint lodged by Holland are discussed below.

**1.** **The Rooker-Feldman Doctrine Bars Consideration of This Case**

At the outset, in this case, Holland has filed a civil action which invites this court to reject findings made by numerous state courts in the course of state litigation instigated by the plaintiff. In this setting, the plaintiff necessarily urges us to effectively sit as a state appellate court and review, re-examine and reject these state court rulings in Holland's prior state cases.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the <u>Rooker-Feldman</u> doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". <u>See also</u> <u>Desi's Pizza, Inc. v. City of Wilkes Barre</u>, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." <u>Desi's Pizza</u>, 321 F.3d at 419.

<u>Gary v. Braddock Cemetery,</u> 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he <u>Rooker-Feldman</u> doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." <u>Turner v. Crawford Square Apartments III, LLP,</u>, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the <u>Rooker-Feldman</u> doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and

rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering lawsuits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," id., particularly where those lawsuits necessarily require us to re-examine the outcome of various state domestic relations matters, claims which have been throughly litigated by these parties. As the United States Court of Appeals for the Third Circuit has observed in dismissing a lawsuit which sought to make a federal case out of state court rulings made in litigation relating to a prior state criminal case:

The Rooker-Feldman doctrine divests federal courts of jurisdiction "if the relief requested effectively would reverse a state court decision or void its ruling." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192 (3d Cir.2006) (internal citations omitted). The doctrine occupies "narrow ground." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). It applies only where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Id. at 291, 125 S.Ct. 1517. . . . Ordering the relief he seeks, however, would require the District Court to effectively determine that the state courts' jurisdictional determinations were improper. Therefore, [Plaintiff] Sullivan's claims are barred by the Rooker-Feldman doctrine. To the extent Sullivan was not "appealing" to the District Court, but instead

was attempting to relitigate issues previously determined by the Pennsylvania courts, review is barred by res judicata. See Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir.2009) (describing conditions in Pennsylvania under which collateral estoppel will bar a subsequent claim).

Sullivan v. Linebaugh, 362 F. App'x 248, 249-50 (3d Cir. 2010).

This principle applies here with equal force, where Holland is inviting us to intervene in a longstanding domestic relations dispute which has been litigated in state court. Indeed, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007).

**2.** **To the Extent That Holland Seeks to Re-litigate Claims That Were Previously Dismissed, the Doctrine of Collateral Estoppel Applies and Bars Re-litigation of These Matters**

In addition, it is evident that Holland's latest complaint appears, in part, to attempt to re-litigate a matter which has previously been conclusively resolved in the prior state litigation, litigation which the parties agree was contested up to the United States Supreme Court, which denied Holland's petition for writ of certiorari.

In conducting an initial screening assessment of this aspect of Holland's complaint:

> " We have the authority to apply the doctrine of claim preclusion or *res judicata sua sponte.* Gleash v. Yuswak, 308 F.3d 758, 760 (7th Cir.2002); Ezekoye v. Ocwen Federal Bank FSB, 179 F.App'x 111, 114 (3d Cir.2006) (non precedential). [and] can . . . invoke *res judicata* 'if it is so plain from the language of the complaint and other documents in the district court's files that it renders the suit frivolous.' Gleash, 308 F.3d at 760." Guider v. Mauer, CIVIL 1:CV-09-1915, 2009 WL 4015568 (M.D. Pa. Nov. 19, 2009).

In our view, upon a preliminary screening review of this, Holland's latest lawsuit, the *res judicata*, collateral estoppel and issue preclusion doctrines apply and compel dismissal of any of the previously litigated claims that are made by the plaintiff in this complaint relating to the past administrative processing of his state prosecutor misconduct claim by the state courts. Collateral estoppel, *res judicata* and issue preclusion are doctrines which play a vital role in litigation. It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and

freedom from harassment....' Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988).

Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir.1986)." Electro-Miniatures Corp. v. Wendon Co., Inc. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding. Parklane Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery,

439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-5 (3d Cir. 2007). Stated succinctly, principles of collateral estoppel compel a later court to honor the an earlier decision of a matter that was actually litigated. Dici v. Commonwealth of Pa., 91 F.3d 542 (3d Cir. 1997). This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law. See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d Cir. 1999); Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d Cir. 1995)(summary judgment, offensive issue preclusion).

Here, we find that, with respect to many of the claims made by Holland in the instant complaint the legal requisites for issue preclusion are fully satisfied, since Holland acknowledges that: " '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). Therefore, these claims should be dismissed.

### 3. The Judges and Judicial Staff Named in this Lawsuit Are Entitled to Immunity

Further, in its current form, Holland's *pro se* complaint fails to state a claim against the numerous state judges and courthouse staff named as defendants in this action. Liberally construed, this *pro se* complaint seeks to hold a host of state court judges personally liable for alleged civil rights violations arising out of the performance of judicial acts in Holland's prior lawsuit. To the extent that Holland seeks in this complaint to hold any judge personally liable for civil rights violations, based upon an alleged failure to act favorably in ruling upon these prior lawsuits, it is well-settled that such officials are individually cloaked with immunity from liability. The United States Supreme Court has long recognized that officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

These longstanding common law immunities apply here and prevent Holland from maintaining this civil action against any state judges named in this complaint since these judges are entitled to judicial immunity for their actions presiding over domestic relations cases, and other related lawsuits. Kwasnik v. Leblon, 228 F.App'x 238, 243 (3d Cir. 2007). As the Third Circuit explained when it rejected a similar effort to impose personal civil rights liability on a judge arising from a domestic relations dispute, this immunity is both broad and absolute:

> A judicial officer in the performance of his or her duties has absolute immunity from suit. Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citation omitted).

Kwasnik, 228 F.App'x at 243.[1]

Further, as we have explained when rejecting a similar efforts to impose personal civil rights liability on a judge, this immunity is both broad and absolute:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.' " Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in

---

[1] While this decision is not precedential, it is highly persuasive as a "paradigm of the legal analysis [this Court] should . . . follow." Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 n.12 (3d Cir. 1996).

performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010), aff'd, 447 F. App'x 397 (3d Cir. 2011); Kwasnik v. Leblon, 228 F. App'x 238, 243 (3d Cir. 2007) ("A judicial officer in the performance of his or her duties has absolute immunity from suit. Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ).

The scope of these protections extend beyond judges to those court personnel named in the complaint, who take discretionary actions at the direction of the courts. As this court has observed:

Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit. See Gallas, 211 F.3d at 772-73 (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d

16

455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well."). Quasi-judicial absolute immunity is available to those individuals, . . . who perform functions closely associated with the judicial process. Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that quasi-judicial immunity applied to clerk of courts, an administrative assistant to the president judge and a court reporter); Henig v. Odorioso, 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suit); Davis v. Philadelphia County, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters).

Stout v. Naus, 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for judicial and quasi-judicial officials directly apply here and prevent the plaintiff from maintaining this civil action for damages against the individual judges and courthouse staff named as defendants in his complaint. This immunity also embraces court personnel like Domestic Relations staff, who perform discretionary functions under the guidance and direction of the courts. Indeed, courts have specifically held that Domestic Relations agency staff are entitled to assert this immunity in civil rights actions. For example, in Slawek v. White, No. 91-1164, 1992 WL 68247, at 3 (E.D. Pa. 1992), the

court conferred this immunity on domestic relations personnel, noting that such immunity was consistent with case law and stating:

> In Hamill v. Wright, 870 F.2d 1032, 1037 (5th Cir.1989), a director of the domestic relations office was declared to be "entitled to full prosecutorial immunity from damages because his decision to bring contempt proceedings and his participation in those proceedings was pursuant to his quasi-judicial duties." (citing Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984 (1976)). Here, these Domestic Relations officials' conduct, under the facts relied upon by the plaintiff, in continuing to prosecute the paternity claim was pursuant to Pennsylvania law and Judge Salas' directives, and as such are entitled to immunity.

Slawek, 1992 WL 68247, at 4. See, e.g., Buchanan v. Gay, 491 F. Supp.2d 483 (D. Del. 2007); White v. Green, No. 09-1219, 2009 WL 2412490 (E.D. Pa. 2009); Johnson v. Lancaster County Children and Youth, No. 92-7135, 1993 WL 245280 (E.D. Pa. 1993). In short, since these judges and courthouse personnel are generally immune from liability for their judicial and quasi-judicial roles in Holland's prior litigation, the plaintiff simply may not maintain an action against any of these defendants, and these claims must all be dismissed.

### 4. The Eleventh Amendment to the United States Constitution Bars this Lawsuit Against the Monroe County Children and Youth Office

Dismissal of this Holland's claims against the Monroe County Children and Youth Services office is also warranted since this *pro se* complaint runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials.

First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the Commonwealth of Pennsylvania, and the Commonwealth clearly has not waived its immunity. Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S.A. §8521(b). Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth

in state court, See 42 Pa.C.S.A. §8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S.A. §8521(b). The constitutional protections afforded to the states under the Eleventh Amendment also expressly apply to claims involving state law enforcement agencies; Atkin v. Johnson, 432 F. App'x 47, 48 (3d Cir. 2011), and the various county common pleas courts, which are defined by statute as institutions of state government. See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). As the United States Court of Appeals for the Third Circuit has aptly observed: "Pennsylvania's domestic relations agencies, such as [a] County Division of Children and Youth Services, are defined by statute as arms of the state courts and institutions of state government", and are, therefore, entitled to invoke the immunity provided by the Eleventh Amendment to state agencies. Wattie-Bey v. Attorney Gen.'s Office, 424 F. App'x 95, 98 (3d Cir. 2011). See, Howard v. New Jersey Div. of Youth & Family Servs., 398 F. App'x 807, 811 (3d Cir. 2010).

Moreover, beyond these constitutional considerations, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against the Commonwealth since it is also well-settled that a state, a state agency, or a state official acting in an

official capacity is not a "person" within the meaning of 42 U.S.C. §1983, the principal federal civil rights statute. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989). In sum, Holland's federal civil rights claims for damages against the Monroe County Children and Youth office may be barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. §1983. Therefore, to the extent that Holland is endeavoring to sue the Commonwealth of Pennsylvania in this action, since the state cannot be sued in this fashion in federal court, these claims should all be dismissed.

> **5.** **Holland's Current Complaint Fails to Meet the Pleading Standards Prescribed by Law Because Many of the Claims Set Forth in the Complaint Are Barred by the Statute of Limitations**

In many respects, Holland's current *pro se* complaint also clearly fails to state a claim within the period of the statute of limitations upon which relief can be granted. In this regard, when conducting a screening review of a *pro se* complaint under 28 U.S.C. § 1915, a court may consider whether the complaint is barred under the applicable statute of limitations. As the United States Court of Appeals for the Third Circuit recently explained when it affirmed the screening dismissal of a *pro se* complaint on statute of limitations grounds:

> Civil rights claims are subject to the statute of limitations for personal injury actions of the pertinent state. Thus, Pennsylvania's two year statutory period applies to [these] claims. See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir.2000). The limitations period begins when the plaintiff

knows or had reason to know of the injury forming the basis for the federal civil rights action. <u>Gera v. Commonwealth of Pennsylvania</u>, 256 Fed.Appx. 563, 564-65 (3d Cir.2007). Although we have not addressed the issue in a precedential decision, other courts have held that although the statute of limitations is an affirmative defense, district court may *sua sponte* dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required. <u>See</u> <u>Fogle v. Pierson</u>, 435 F.3d 1252, 1258 (10th Cir.2006); <u>see also</u> <u>Eriline Co. S.A. v. Johnson</u>, 440 F.3d 648, 656-57 (4th Cir.2006) (citation omitted)(finding that a district court's screening authority under § 1915(e) "differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered sua sponte.").

<u>Smith v. Delaware County Court</u> 260 F. App'x. 454, 455 (3d Cir. 2008); <u>see also</u> <u>Jackson v. Fernandez</u>, No. 08-5694, 2009 WL 233559 (D.N.J. Jan. 26, 2009); <u>Hurst v. City of Dover</u>, No. 04-83, 2008 WL 2421468 (D. Del. June 16, 2008).

Applying these standards, we find that the allegations in this *pro se* complaint are clearly subject to dismissal on statute of limitations grounds. Specifically, this complaint–which recited alleged failures by police and children and youth services to protect Holland's children between 2003 and April 2011–was first filed on May 24, 2013, more than two years after the last events complained of by Holland and ten years after the first of the events recited in this pleading. Therefore, on its face, the complaint is simply time-barred by the two year statute of limitations generally applicable to civil rights matters.

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. <u>Wilson v. Garcia</u>, 471

U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. <u>Sameric Corp. of Delaware, Inc. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998); <u>see also</u>, <u>Nelson v. County of Allegheny</u>, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." <u>Barnes v. American Tobacco Co.</u>, 161 F.3d 127, 154 (3d Cir. 1998) (quoting <u>Kichline v. Consolidated Rail Corp</u>., 800 F. 2d 356, 360 (3d Cir. 1986)). <u>See also</u> <u>Lake v. Arnold</u>, 232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." <u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." <u>Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.</u>, 927 F.2d 1283, 1295 (3d Cir.1991). In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic

acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001)

In this case, Holland complains about an array of matters, which commenced in 2003 and allegedly concluded in April 2011. In every instance, Holland immediately attached a high degree of significance and permanence to the events set forth in this complaint, since she filed lawsuits in state court relating to these matters. Thus, Holland recites well-pleaded facts in her complaint which clearly reveal that, to the extent these events entailed violations of the plaintiff's constitutional rights, those violations were known and recognized by Holland when they first occurred, many years ago. Thus, these events plainly had the degree of significance and permanence which should have triggered the plaintiff's awareness of her duty to assert his rights. Therefore, in this case a straightforward application of the two-year statute of limitations also compels dismissal of this action as untimely.

Holland cannot save these time-barred claims by resort to the continuing violation theory since that tolling doctrine "will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998). Indeed, with respect to the controlling consideration relating to this equitable tolling doctrine, "the degree of permanence [of the injury, i.e.]-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his rights," Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001), it is apparent that Holland subjectively identified the gravity and permanence of these events when they occurred since Holland brought a state lawsuit relating to these precise claims. On these facts, Holland simply cannot evade the bar of the statute of limitations on some continuing wrongs theory, since the wrongs, if any, committed here were fully known by Holland more than two years ago. Therefore, on the face of the complaint, these claims which pre-date May 2011 are all time-barred.

### 6. Holland's Claim Against the Pocono Regional Police Department Fails

Finally, Holland's complaint names the Pocono Regional Police Department as a defendant but contains no well-pleaded facts identifying a custom or policy of the department which directly led to any violation of the plaintiff's civil rights. This claim fails for two reasons.

First, with respect to the Pocono Regional Police Department as an institutional defendant, we note that the police department is not be a proper institutional defendant in this action since police departments serve only as an administrative arm of a municipality or other governmental body, and it is a municipality through which any liability must flow to the police department. Indeed, it has been repeatedly held that a police department is not a "person" for purposes of § 1983 and, therefore, is not a proper defendant in a § 1983 action. Blackwell v. Middletown Borough Police Dept., 1:12-CV-825, 2012 WL 6012568 (M.D. Pa. Nov. 16, 2012) report and recommendation adopted, 1:12-CV-825, 2012 WL 6002689 (M.D. Pa. Nov. 30, 2012); Golya v. Golya, 2007 U.S. Dist. LEXIS 58093, *29–30 (M.D.Pa.2007) (explaining that courts within the Third Circuit have concluded that a police department is merely a sub-unit of the local government and is not amenable to suit under § 1983); Wivell v. Liberty Township Police Dept., 2007 U.S. Dist. LEXIS 54306, *5–6 (M.D.Pa.2007) (explaining that police department not subject to suit in a § 1983 action); Mitros v. Cooke, 170 F.Supp.2d 504, 507 (E.D.Pa.2001) (city police department is a sub-unit of the city government that is merely a vehicle through which the city fulfills its policing functions, and is not a separate entity for purposes of suit; Tobin v. Badamo, 3:00CV783, 2000 WL 1880262 (M.D.Pa. Dec.20, 2000) (municipal police department is not a proper party to a section 1983 action because it is merely a subunit of the city and not a separate corporate entity); McMahon v.

Westtown–East Goshen Police Dept., No. Civ.A. 98–3919, 1999 WL 236565, 1999 U.S. Dist. LEXIS 5551, at *4 (E.D.Pa. Apr.22, 1999) (citing Johnson v. City of Erie, 834 F.Supp. 873, 878–79 (W.D.Pa.1993) and Agresta v. City of Philadelphia, 694 F.Supp. 117, 119 (E.D.Pa.1988)); Johnson v. City of Erie, Pa., 834F.Supp.873, 879 (W. D.Pa.1993). Therefore, Holland may not maintain a federal civil rights claim against the Pocono Regional Police Department as an institutional entity.

Further the complaint contains no well-pleaded facts identifying a custom or policy of the police department which directly led to any violation of the plaintiff's civil rights. This, too, is fatal flaw in this pleading since municipalities and other local governmental entities may not be held liable under § 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability. Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1948 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). However, a municipality may be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" to prevail. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). This custom must be "so widespread as to have the force of law." Id. at 404; see also Beck

v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted).

The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .'" Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the "'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.'" Id. at 325 (citations omitted). In summary, analysis of a claim under Monell requires separate analysis of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

A municipality may be liable for constitutional violations resulting from inadequate training or supervision of its employees only if the failure to train amounts to a custom of the municipality. Such a failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the police come in

28

contact." Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). To prove municipal liability on a theory of deliberate indifference is an especially difficult showing for a plaintiff to satisfy where the plaintiff has alleged that insufficient training or supervision has caused constitutional violations. Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). Such a showing requires that "(1) municipal lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). Moreover, the plaintiff proceeding on such a theory must establish that the municipality's "deliberate conduct . . . was the 'moving force' behind the injury alleged." Reitz, 125 F.3d at 145 (quoting Brown, 520 U.S. at 404). The need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." Horton v. City of Harrisburg, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. July 23, 2009) (quoting Strauss v. Walsh, No. Civ. A. 01-3625, 2002 U.S. Dist. LEXIS 24717, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002)). Additionally, in order to recover for municipal liability on a failure-to-train theory, the alleged failure must be "closely related to the ultimate (constitutional) injury." Woloszyn, 396 F.3d at 325.

The Supreme Court has recently reaffirmed the guiding principles which define municipal civil rights liability based upon a failure to train or oversee law enforcement personnel. In Connick v. Thompson, – U.S.– , 131 S.Ct. 1350, 1359 (2011), the court described the parameters of municipal liability in the following terms:

> A municipality or other local government may be liable . . .if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their *own* illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479(1986) . . . . They are not vicariously liable under § 1983 for their employees' actions. . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S., at 691. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . . These are "action[s] for which the municipality is actually responsible." Pembaur, supra, at 479–480. In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See Oklahoma City v. Tuttle, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." . . . . Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983. . . . " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a

known or obvious consequence of his action." . . . . Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.

Id.(some citations deleted).

In our view Holland's current complaint plainly fails to meet this exacting standard of pleading since it does not identify any policy or custom which caused a constitutional deprivation for the plaintiff. In the absence of such well-pleaded allegations, a municipal liability claim cannot be sustained against the Pocono Regional Police Department and this claim should be dismissed.

## C.    The Complaint Should be Dismissed Without Prejudice

While this screening merits analysis calls for dismissal of this action in its current form, we recommend that the plaintiff be given another, final opportunity to further litigate this matter by endeavoring to promptly file an amended complaint setting forth well-pleaded claims within the period of the statute of limitations. We recommend this course mindful of the fact that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend is not necessary in a case such as this where amendment would be futile or result in undue delay, Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Accordingly, it is

recommended that the court provide the plaintiff with an opportunity to correct these deficiencies in the *pro se* complaint, by dismissing this deficient complaint at this time without prejudice to one final effort by the plaintiff to comply with the rules governing civil actions in federal court, by filing an amended complaint containing any timely and proper claims which she may have.

### III.   Recommendation

Accordingly, for the foregoing reasons, the plaintiff's request to proceed *in forma pauperis* is GRANTED (Doc. 2.), but IT IS RECOMMENDED that the plaintiff's complaint be dismissed without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order, and IT IS FURTHER RECOMMENDED that the plaintiff's motion for summary judgment (Doc. 12.) be DENIED.  In light of this screening recommendation, IT IS FURTHER RECOMMENDED that the defendants' four motions to dismiss (Docs. 8,10,16,and 20.), along with a motion to strike Holland's summary judgment motion, (Doc. 18.), be DISMISSED as moot, but without prejudice to renewal of these motions upon the filing of any amended complaint by Holland that endeavors to comply with the court's guidance as set forth in this Report and Recommendation.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of July 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge